# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KEVIN LEON MAJOR** | **CRIMINAL NOS.**<br><br>**09-434 & 09-435-1** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                 **November 27, 2023**

Defendant Kevin Leon Major, an inmate incarcerated at FCI Hazelton, has filed *pro se* motions for compassionate release and a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Upon consideration of the parties' submissions and the available record, and for the reasons explained below, the Court will deny Mr. Major's motions.

## I.     BACKGROUND

From about September 2004 through June 2009, Mr. Major led a crack cocaine trafficking organization in Lancaster, Pennsylvania.[1] Mr. Major was involved in all facets of the drug operation, including taking orders from customers, cooking powder cocaine into crack, repackaging and selling the drugs, and making trips to procure cocaine from suppliers.[2] Mr. Major was responsible for distributing at least a kilogram and a half of crack cocaine.[3]

On February 7, 2009, immediately after delivering drugs to a customer, Mr. Major attempted to carjack the customer's vehicle at gunpoint.[4] As the customer and his girlfriend fled

---

[1] Gov't Opp'n Compassionate Release [Doc. No. 65] at 2, Crim. No. 09-434.

[2] *Id.*

[3] *Id.*

[4] *Id.* at 2–3.

from the vehicle, Mr. Major fired multiple shots at the customer, who returned fire.[5] Fortunately, no injuries resulted.[6]

On June 30, 2009, a federal grand jury returned two indictments charging Mr. Major with a total of eight counts for his involvement in the drug operation (Crim. No. 09-435-1) and the attempted carjacking (Crim. No. 09-434).[7] On September 27, 2010, Mr. Major pled guilty to one count of conspiracy to distribute 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. § 846, and three counts of distribution of crack in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).[8] On the same date, Mr. Major pled guilty to one count of attempted carjacking in violation of 18 U.S.C. § 2119, one count of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), and one count of convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e).[9]

Because Mr. Major was classified as both a career offender and an armed felon, his guideline sentence range was calculated at 360 months to life.[10] However, the Court granted a downward departure and sentenced Mr. Major to 240 months of incarceration—significantly below the guideline range.[11]

On April 4, 2023, Mr. Major filed a *pro se* motion for compassionate release.[12] On April 24, 2023, the government filed a response in opposition to Mr. Major's motion for

---

[5] *Id.* at 3.

[6] *Id.*

[7] Indictment [Doc. No. 1] at 1, Crim. No. 09-435-1; Indictment [Doc. No. 1] at 1, Crim. No. 09-434.

[8] *See* Doc. No. 164, Crim. No. 09-435-1.

[9] *See* Doc. No. 16, Crim. No. 09-434.

[10] Presentence Report at 41 ("PSR").

[11] Criminal J., Aug. 3, 2012 [Doc. No. 282] at 3, Crim. No. 09-435-1; Criminal J., Aug. 3, 2012 [Doc. No. 31] at 3, Crim. No. 09-434.

[12] Major's Mot. Compassionate Release [Doc. No. 61], Crim. No. 09-434.

compassionate release.[13] On September 1, 2023, Mr. Major filed a reply to the government's opposition.[14]

## II.   LEGAL STANDARD

"A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35."[15] One statute that permits such modifications is 18 U.S.C. § 3582(c)(1)(A)(i), which, as amended by the First Step Act of 2018, allows "prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf."[16] Once a defendant has satisfied the exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'[17]; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable."[18] The defendant bears the burden of showing that relief is warranted.[19]

---

[13] Gov't Opp'n Compassionate Release [Doc. No. 65], Crim. No. 09-434.

[14] Major's Reply [Doc. No. 76], Crim. No. 09-434.

[15] *United States v. Van Sickle*, No. 18-250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003)).

[16] *United States v. Hill*, No. 19-38, 2020 WL 2542725, at *1 (D. Conn. May 19, 2020) (citing *United States v. Almontes*, No. 05-58, 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020)).

[17] While any sentence reductions under § 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission," the existing policy statement issued by the Sentencing Commission is "not applicable—and not binding—for courts considering prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021); 18 U.S.C. § 3582(c)(1)(A). Nevertheless, District Courts may "consult[ ] . . . the [Sentencing Commission's] policy statement to form a working definition of 'extraordinary and compelling reasons.'" *Andrews*, 12 F.4th at 260.

[18] *Andrews*, 12 F.4th at 258 (quoting 18 U.S.C. § 3582(c)(1)(A)).

[19] *See United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020); *United States v. Resnick*, 451 F. Supp. 3d 262, 266 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *United States v. Clarke*, No. 09-705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010)).

## III.   DISCUSSION

### A.  Exhaustion

Under § 3582, as modified by the First Step Act of 2018, a prisoner may seek compassionate release either (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant," after (a) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (b) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"[20] Mr. Major argues that he has satisfied the exhaustion requirement because the warden did not respond to his compassionate release request within 30 days of receipt.[21] The government confirms that Mr. Major submitted his request to the warden on December 21, 2022, and the warden denied this request on February 9, 2023. Therefore, it agrees that Mr. Major has satisfied the 30-day exhaustion requirement before filing.[22]

### B.  "Extraordinary and Compelling" Reasons Warranting a Sentence Reduction

Mr. Major's "next hurdle is to establish that 'extraordinary and compelling reasons' warrant a reduction of [his] sentence."[23] As discussed above, District Courts may "consult[ ] . . . the [Sentencing Commission's] policy statement to form a working definition of 'extraordinary and compelling reasons.'"[24] On November 1, 2023, amendments to the Sentencing Guidelines took effect. Possibly relevant to the arguments raised by Mr. Major,

---

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] Major's Mot. Compassionate Release [Doc. No. 61] at 3, Crim. No. 09-434.

[22] Gov't Opp'n Compassionate Release [Doc. No. 65] at 4, Crim. No. 09-434.

[23] *United States v. Canratore*, No. 16-0189, 2020 WL 2611536, at *3 (D.N.J. May 21, 2020).

[24] *Andrews*, 12 F.4th at 260.

the amendments provide grounds for relief for inmates "suffering from a medical condition that requires long-term or specialized medical care that is not being provided"[25] and for those who are at an increased risk of serious medical complications due to exposure to an ongoing outbreak of infectious disease or a public health emergency.[26] The amendments also made modifications to the grounds for release based on family circumstances by (1) expanding the definition of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care; (2) adding a provision for cases in which a defendant's parent is incapacitated and the defendant would be the only available caregiver; and (3) adding a provision for a person whose relationship with the defendant is similar in kind to that of an immediate family member, and the defendant would be the only available caregiver.[27]

Mr. Major contends that his medical conditions increase his risk of a severe COVID-19 infection and that the recent prison sentence of his minor child's mother would leave the child without a close family caregiver. For the reasons set forth below, Mr. Major has not demonstrated extraordinary and compelling circumstances for release.

### 1.  Medical Conditions

Mr. Major asserts that he suffers from kidney disease, high blood pressure, gastroesophageal reflux disease, and dysphagia, and that these conditions in a prison environment increase his risk of a severe COVID-19 infection.[28] Mr. Major notes that he is

---

[25] *See* U.S.S.G. § 1B1.13(b)(1)(C).

[26] *See* U.S.S.G. § 1B1.13(b)(1)(D).

[27] *See* U.S.S.G. § 1B1.13(b)(3). The amended guidelines include other situations not relevant here, such as a basis for relief for victims of abuse and for those serving unusually long sentences. *See* U.S.S.G. § 1B1.13(b)(4), (6).

[28] Major's Mot. Compassionate Release [Doc. No. 61] at 1, 6–7, Crim. No. 09-434.

"housed in a crowded facility with limited ability to take necessary self-protective measures."[29] Of the conditions Mr. Major suffers from, kidney disease and high blood pressure[30] are considered risk factors by the Centers for Disease Control and Prevention ("CDC").[31] The government argues that Mr. Major's medical conditions cannot amount to an extraordinary and compelling reason for release because they are well monitored by the BOP and Mr. Major was offered, and refused, a COVID-19 vaccine.[32]

It is difficult to overstate the impact that COVID-19 has had on the criminal legal system. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[33] The Third Circuit has emphasized that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[34] "Rather, Defendant

---

[29] *Id.* at 1.

[30] Mr. Major's prisoner medical records also show that he suffers from hypertension. This condition appears to be well monitored by the BOP and high blood pressure is unlikely to constitute an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Warrington*, No. 18-179, 2021 WL 825400, at *4 (D.N.J. Mar. 4, 2021) (collecting cases); *United States v. Nesbitt*, No 09-181, 2020 WL 3412577, at *2–3 (E.D. Pa. June 22, 2020) (mild and well-managed hypertension does not justify release); *United States v. Daniels*, No. 15-127, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (same); *United States v. Tartaglione*, No. 15-491, 2020 WL 3969778, at *6 (E.D. Pa. July 14, 2020) (hypertension and hyperthyroidism, if presented by 64-year-old, "are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19"); *United States v. Martines*, No. 94-127-3, 2021 WL 427285, at *5 (E.D. Pa. Feb. 8, 2021) ("Courts routinely find petitioners with well-managed hypertension do not present an extraordinary and compelling reason for their early release.").

[31] *See* Ctrs. for Disease Control and Prevention, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/6T3M-6BA6] (updated May 11, 2023; last accessed Nov. 20, 2023).

[32] Gov't Opp'n Mot. Compassionate Release [Doc. No. 65] at 14, Crim. No. 09-434.

[33] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citation omitted).

[34] *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).

6

must establish that the risks to him, in light of his individual medical conditions and other circumstances, are so extraordinary and compelling that [the Court] should release him[.]"[35]

Moreover, the availability of COVID-19 vaccines significantly mitigates the medical risk. According to the record, on February 7, 2021, the BOP offered Mr. Major the Pfizer COVID-19 vaccine, which he declined.[36] A petitioner who declines a COVID-19 vaccine is "within his rights to refuse any treatment he wishes to forego,"[37] but his "refusal of the vaccine undermines his claim that extraordinary and compelling reasons justify release."[38]

The record indicates that the BOP is appropriately treating and monitoring Mr. Major's medical conditions. He has been prescribed various medications to control his hypertension, and BOP medical personnel regularly advise him on steps he can take to prevent his chronic kidney disease from becoming more serious.[39] Accordingly, Mr. Major has not shown that his medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[40]

### 2. Family Circumstances

---

[35] *United States v. Rodriguez*, 468 F. Supp. 3d 681, 684 (E.D. Pa. 2020).

[36] Gov't Opp'n Compassionate Release [Doc. No. 65] at 6, Crim. No. 09-434.

[37] *United States v. Ortiz*, No. 18-264, 2021 WL 1422816, at *4 (E.D. Pa. Apr. 15, 2021) (quoting *United States v. Jackson*, No. 15-260(7), 2021 WL 806366, at *1–2 (D. Minn. Mar. 3, 2021)).

[38] *United States v. Pryor*, No. 22-2738, 2023 WL 1793963, at *2 (3d Cir. Feb. 7, 2023); *see also United States v. Edwards*, No. 19-266, 2021 WL 2903074, at *3–4 (E.D. Pa. July 9, 2021); *United States v. Adams*, No. 18-502-1, 2021 WL 2822939, at *2 (E.D. Pa., July 7, 2021); *United States v. Bautista*, No. 19-24-1, 2021 WL 1264596, at *5 (E.D. Pa. Apr. 6, 2021); *United States v. Jackson*, No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021); *United States v. Robinson*, No. 16-94, 2021 WL 719658, at *1 (W.D. Pa. Feb. 23, 2021).

[39] *See* Gov't Opp'n Compassionate Release [Doc. No. 65] at 5–6, Crim. No. 09-434. Specifically, Major has been prescribed amlodipine, hydrochlorothiazide, and losartan potassium to control his hypertension. *Id.* at 5.

[40] U.S.S.G. § 1B1.13(b)(1)(B). In addition, Major is held at FCI Hazelton, which is currently categorized at Level 1 (indicating minimal modifications to the facility's procedures). Fed. Bureau Prisons, COVID-19 Cases, www.bop.gov/coronavirus/covid19_statistics.html [perma.cc/8KKX-RT3A] (last accessed Nov. 7, 2023). As of this writing, no inmates at the facility have reported positive for COVID-19. *Id.* Thus, Major's risk is further minimized because FCI Hazelton appears to be managing COVID-19 effectively.

Mr. Major also seeks compassionate release because the mother of his minor child was recently sentenced to prison.[41] As an initial matter, the government raises concerns about Mr. Major's past behavior, including his failure to pay child support and having multiple relationships outside of marriage.[42] The Court does not find these facts appropriate or relevant to a compassionate release determination.

The availability of a potential caretaker is, however, a factor the Court may consider. The policy statement provides, in relevant part, that extraordinary and compelling reasons exist for "family circumstances" when there is "death or incapacitation of the caregiver of the defendant's minor child . . . ."[43] "In relation to a motion for compassionate release grounded on the claim a defendant is the sole person available to provide care for a minor child, a defendant typically must establish that all other potential caregivers for their minor child are incapacitated."[44] To prove incapacitation, a defendant must establish that a person is "completely disabled" or unable to "carry on any self-care and is totally confined to a bed or chair."[45] Further, it is not enough to show a potential caregiver is merely "somewhat sick, but not incapacitated."[46]

Mr. Major notes that his child is currently under the care of the child's grandmother, but he contends that she "is of advanced age and poor health" and that having at least one parent at

---

[41] Major's Reply [Doc. No. 76] at 9, Crim. No. 09-434.

[42] Gov't Opp'n Compassionate Release [Doc. No. 65] at 18–19, Crim. No. 09-434.

[43] U.S.S.G. § 1B1.13(b)(3)(A).

[44] *United States v. Ohl*, No. 22-161, 2023 WL 4552885, at *2 (E.D. Pa. July 14, 2023) (citing *United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352, at *6 (E.D. Pa. Oct. 9, 2020)).

[45] *Cruz-Rivera*, 2020 WL 5993352 at *7.

[46] *United States v. Seals*, 509 F. Supp.3d 259, 263 (E.D. Pa. 2020); *see also Cruz-Rivera*, 2020 WL 5993352 at *7 (finding, in considering a motion for compassionate release, that a caregiver was not incapacitated from caring for the defendant's son despite being diagnosed with both breast cancer and diabetes). "District courts routinely deny motions for compassionate release when the defendant cannot show that they would be the only available caregiver, even if their incarceration imposes substantial burdens on their spouse or co-parent to a minor child." *Cruz-Rivera*, 2020 WL 5993352 at *7.

home would be "far more beneficial."[47] The government argues that release is not warranted because Mr. Major cannot establish that he is the only available caregiver.[48]

In *United States v. Fields*, this Court granted a motion for compassionate release when the defendant established that his child was in foster care after having been sexually abused while living with her mother.[49] Significantly, the defendant in *Fields* was only months from release and sought the opportunity to participate in custody proceedings where there was no other available caregiver. In contrast, Mr. Major's child is being cared for by the child's grandmother and Mr. Major still has five years of his sentence to serve.

While Mr. Major points to the grandmother's age and health as evidence of her potential incapacitation, this alone is insufficient.[50] The Court recognizes the inherent benefits a child gains from having a parent at home, but that factor alone does not justify release in these circumstances. Additionally, Mr. Major's proposed living arrangement with Penny Dotson raises concerns. Ms. Dotson has an extensive criminal record, including prior convictions of assault, burglary, and drug offenses.[51] Therefore, Mr. Major has failed to demonstrate extraordinary and compelling family circumstances that warrant release.

### C.  Danger to the Community

Mr. Major argues he is not a danger to the community because over fourteen years have passed since he was involved in criminal activity, and he has completed extensive programming

---

[47] Major's Reply [Doc. No. 76] at 9, Crim. No. 09-434.

[48] Gov't Opp'n Compassionate Release [Doc. No. 65] at 19, Crim. No. 09-434.

[49] 569 F. Supp. 3d 231, 234, 239–42 (E.D. Pa. 2021).

[50] *See Cruz-Rivera*, 2020 WL 5993352 at *7; *United States v. Thornton*, No. 18-167-1, 2020 WL 4368155 (W.D. Pa. July 29, 2020) (finding that caregiver's loss of employment and her home as a result of 8-year-old son's cancer did not constitute incapacitation or death of a caregiver for compassionate release).

[51] Gov't Opp'n Compassionate Release [Doc. No. 65] at 3, 22, Crim. No. 09-434.

while in BOP custody.[52] The government contends that Mr. Major continues to present a danger to the community due to the severity of his crimes and his lengthy criminal history.[53]

A defendant's release must be "consistent with any applicable policy statements issued by the Sentencing Commission."[54] The Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]"[55] § 3142(g) instructs the Court to consider factors such as "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . past conduct, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[56]

The nature and circumstances of Mr. Major's crimes are concerning. Mr. Major held a significant leadership role within a large-scale drug trafficking operation and was responsible for the distribution of at least a kilogram and a half of crack cocaine. His involvement in the organization was substantial and covered all facets of the organization—beyond the mere sale of the drugs—including cooking powder cocaine into crack and making trips to procure cocaine from suppliers. The Court takes particular note of the armed carjacking offense, which involved

---

[52] *See* Major's Reply [Doc. No. 76] at 2, Crim. No. 09-434. Specifically, Major points to over twenty certificates of achievement he earned in areas such as education, training, and personal development during his incarceration. *Id.* In addition, Mr. Major notes that he is remorseful for his past criminal behavior. *Id* at 3.

[53] *See* Gov't Opp'n Compassionate Release [Doc. No. 65] at 22, Crim. No. 09-434.

[54] 18 U.S.C. § 3582.

[55] U.S.S.G. § 1B1.13(a)(2).

[56] 18 U.S.C. § 3142(g).

an active firefight between Mr. Major and a customer and posed an obvious danger to bystanders and members of the community.

Furthermore, Mr. Major's extensive criminal history underscores his potential danger to the community. He has five prior convictions for drug felonies, three for marijuana possession, four for making false statements to law enforcement, and multiple violations of parole or probation. The Court commends Mr. Major for his steps toward self-improvement. However, his behavior has not consistently reflected full rehabilitation. Specifically, Mr. Major was cited for two violations during his incarceration, one of which involved possessing a dangerous weapon. Given the severity of Mr. Major's convictions and his lengthy criminal history, the Court concludes that he remains a danger to the community at this time.

### D. Sentencing Factors

Mr. Major argues that the § 3553(a) factors support his release and the time he has served is sufficient to satisfy the goals of sentencing.[57] The government argues that Mr. Major "fails to demonstrate how release following his commission of extremely serious drug trafficking and violent crimes reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offenses."[58]

Any sentence reduction granted under § 3582(c)(1)(A) must be supported by the applicable sentencing factors. The § 3553(a) factors closely resemble those of § 3142(g).[59] The relevant sentencing factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

---

[57] *See* Major's Reply [Doc. No. 76] at 9, 11–12, Crim. No. 09-434.

[58] Gov't Opp'n Compassionate Release [Doc. No. 65] at 22, Crim. No. 09-434 (citing 18 U.S.C. § 3553(a)(2)(A)).

[59] *United States v. Salvagno*, 456 F. Supp. 3d 420, 430 (N.D.N.Y. 2020) ("The factors listed in 3142(g) are largely duplicative of those in § 3553(a).") (quotation marks and citation omitted).

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.][60]

Here, the relevant § 3553(a) sentencing factors weigh heavily against release. As described above, Mr. Major has an extensive history of committing dangerous crimes. Particularly, his leadership role in a large crack cocaine trafficking operation and his attempted armed carjacking underscore his dangerous nature.[61] When the Court sentenced Mr. Major to 240 months of imprisonment, it did so to reflect the seriousness of the crime, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. Notably, the 240-month sentence imposed on Mr. Major was well below the advisory guideline range of 360 months to life imprisonment. Therefore, release is not warranted at this time.

## IV.   CONCLUSION

Given that the BOP is adequately treating Mr. Major's medical conditions and that his child's grandmother is available as a caregiver, Mr. Major fails to present an extraordinary and compelling reason for a sentence reduction at this time. Therefore, Mr. Major's motions for

---

[60] 18 U.S.C. § 3553(a).

[61] *See United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (per curiam) (not precedential) (granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the defendant's criminal history and institutional infractions).

compassionate release and a sentence reduction will be denied at this time. An order will be entered.